[Civ. No. 4257. Fourth Dist. Sept. 21, 1951.]

SCHUYLER S. WILSON et al., Appellants, v. PACIFIC COAST TITLE INSURANCE COMPANY, Respondent.

Ruel Liggett, Roy M. Cleator and E. C. Davis for Appellants.

Cannon & Callister for Respondent.

MUSSELL, J.—This is an action for damages alleged to have been suffered by plaintiffs as a result of a failure of title to real property, which title had been insured by the defendant.

Plaintiffs acquired a trust deed and note by written assignment dated August 15, 1946, and on the same date, the "San Diego Pacific Title Company" was substituted as trustee under the deed in place of the original trustee named therein. This substitution, together with a notice of default and election to sell was recorded August 30, 1946. Following the recordation of these documents, the trustee executed its notice of trustee's sale, posted the necessary notice and on December 27, 1946, sold the property involved to the plaintiffs herein. After receiving the trustee's deed, plaintiffs listed the property for sale with Mr. Riggoli, a real estate broker, and on March 30, 1948, entered into a contract and escrow to sell it to Mr. and Mrs. Petereit for the sum of $9,500.

The escrow agent, La Mesa-El Cajon Corporation, with the consent of plaintiffs, endeavored to obtain a policy of title insurance from the Southern Title and Trust Company of San Diego. This company, however, declined to insure the title of the plaintiffs and its reasons for such refusal were set forth in a written report. Plaintiffs procured an extension of the pending escrow to August 15, 1948. They then took the report of the Southern Title Company to their attorneys who, on April 13, 1948, informed the defendant, by letter, of the foregoing facts and stated that under the conditions then existing it would be necessary to initiate proceedings over again in order to secure a "merchantable" title. It was also stated in the letter that the Wilsons expected to hold the defendant responsible for any damage that might result to them, including the necessary expenses of resale.

Plaintiffs did not procure a policy of title insurance within the extended period of the escrow and the Petereits withdrew their purchase money therefrom. Plaintiffs again foreclosed their trust deed and on January 19, 1949, sold the property to Mr. and Mrs. Robertson for the sum of $8,000, which was the best price then obtainable. The real estate broker filed a suit against the plaintiffs for his commission in the Petereit

transaction and recovered judgment of $475, plus $20.50 costs.

Plaintiffs' attorneys then, on February 28, 1949, wrote to the defendant advising it of the situation and stating that the plaintiffs held defendant responsible for the damages resulting to them through these transactions. Demand was made for a settlement and following correspondence between the attorneys for the parties, this action was filed on August 31, 1949.

It was alleged in the complaint, among other matters, that on March 26, 1947, the defendant issued its policy of title insurance insuring the plaintiffs "against loss or damage . . . which they might sustain by reason of title of the . . . land being vested otherwise than in them, or by reason of the unmarketability of the title of any of them"; that "the purchasers refused to complete their contract of purchase for the reason that the title to said land was vested otherwise than in plaintiffs and that title thereto was unmarketable"; and that thereafter plaintiffs proceeded to perfect said title and in order to do so it was necessary to foreclose the deed of trust and to expend certain sums for the foreclosure and escrow fees. Plaintiffs claimed damages in the sum of $198.80 costs of foreclosure; $22 escrow fees; $495.50 paid to the real estate broker; and $1,500, the difference between the price received at the second sale of the property and the amount offered therefor by the Petereits.

The trial court found *inter alia* as follows: "It is true that the said Petereits refused to complete the purchase of said property but it is not true that the title to said land was vested otherwise than in the plaintiffs"; that "It is not true that the title to said land was unmarketable"; that "It is untrue that the plaintiffs proceeded to perfect the title to said land and it is untrue that for that purpose it was necessary for the plaintiffs to foreclose a certain deed of trust and spend the sum of $198.80, or any other sum whatever"; that "It is untrue that by reason of any of the matters or things set out in said complaint or otherwise or at all that the plaintiffs have been damaged in the sum of $2,216.30, or in any other amount whatever by reason of any action or inaction of the defendant." These findings are supported by substantial evidence and cannot be here disturbed.

The reasons given by the Southern Title Company for its refusal to insure plaintiffs' title were that there was no assignment then of record from the original beneficiary to

the new beneficiaries; that the substitution of trustee contained neither the acknowledgment nor the affidavit of service required by Civil Code, section 2934a, and that the trustee's deed indicated that the notice of default was never published or personally served as required by Civil Code, section 2924b.

The assignment of beneficial interest of the deed of trust is in writing and dated August 15, 1946. While it was not acknowledged until April 15, 1948, or recorded until April 29, 1948, it was apparently actually in existence at the time of the issuance of the policy of title insurance in question, and was a valid transfer of title.

It appears from the record that all parties concerned in the substitution for trustee at the time of the assignment joined in its execution or had actual knowledge of such substitution. The trust deed contains a provision that "the recitals, in any such deed, or any facts or matters affecting the regularity or validity of such sale, shall be conclusive proof of the truthfulness of such recitals, and such deed shall be conclusive against all persons as to all matters recited therein." The trust deed also recites that it is made between "Margaret J. MacVaugh, 359 Emerald Avenue, El Cajon, California, party of the first part, hereinafter called the trustor and William E. Crane of San Diego, . . . trustee." There was a substantial compliance with the requirement that the address of the trustor be placed in the trust deed and since there was no request for notice of default as contemplated in the section, publication of the notice of default was not required.

Plaintiffs argue that their title under the trust deed and the foreclosure proceedings was defective. However, the refusal of the Southern Title Company to insure plaintiffs' title for its stated reasons is merely an expression of the opinion of the title company. Plaintiffs acquired title to the property involved by foreclosure proceedings and the trustee's deed issued thereafter. There is no substantial evidence in the record upon which the trial court could have found that the title to the land involved was vested otherwise than in plaintiffs. Whether such title was defective was a question of fact for the determination of the trial court, as was the question whether such title was "unmarketable."

In *Hocking* v. *Title Ins. & Trust Co.*, 37 Cal.2d 644, 649 [234 P.2d 625], it is said:

" 'A marketable title, to which the vendee in a contract for the sale of land is entitled, means a title which a reasonable purchaser, well informed as to the facts and their legal

bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear on such transactions, be willing and ought to accept.' ''

In the instant case the trial court found that ''It is not true that the title to said land was unmarketable.'' The evidence shows that Mr. Petereit asked to withdraw his money when the escrow time expired. Whether such withdrawal was because of the condition of the title, or for other reasons, was for the trial court's determination. The trial court's implied findings that plaintiffs failed to establish the unmarketability of title is supported by the record.

The policy of title insurance issued by defendant herein contains the following provisions: ''A statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within sixty days after such loss or damage shall have been ascertained. No action or proceeding for the recovery of any such loss or damage shall be instituted or maintained until after full compliance by the Insured with all the conditions imposed on the Insured by this Policy''; that ''In case knowledge shall come to any Insured of any claim of title or interest adverse to the title as insured, or which might cause loss or damage for which the Company is or may be liable . . . such Insured shall at once notify the company thereof in writing''; that ''In all cases where this Policy permits or requires the Company to prosecute or defend any action or proceeding, the Insured shall secure to it the right to so prosecute or defend such action or proceeding, and all appeals therein''; and that ''The Company reserves the option to pay, settle or compromise any claim insured against.'' In this connection, the trial court found that the plaintiffs did not comply with the terms of the agreement contained in the policy relative to the furnishing of the required statement in writing within the time specified in the policy.

In view of what we have here said relative to the trial court's findings as to the condition of plaintiffs' title, it is unnecessary to pass upon the question of the sufficiency of the evidence to support the findings relative to the non-performance by plaintiffs of the terms and conditions of the policy of title insurance issued by the defendant.

Judgment affirmed.

Griffin, Acting P. J., concurred.