Filed 8/27/13; pub. & mod. order 9/26/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN SHAUN ROSSBERG et al., | |
| Plaintiffs and Appellants, | G047028 (cons. with G047355) |
| v. | (Super. Ct. No. 30-2011-00462732) |
| BANK OF AMERICA, N.A., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz, Judge. Affirmed. Petition for writ of mandate dismissed as moot.

Robinson-Legal and Raymond G. Robinson for Plaintiffs and Appellants.

Bryan Cave, Sean D. Muntz and Thomas E. Nanney for Defendants and Respondents.

\*          \*          \*

Plaintiffs and appellants Alan Shaun Rossberg (Shaun) and Brenda Rossberg (Brenda; collectively Rossbergs)[1] appeal from a judgment dismissing their complaint after the trial court sustained a demurrer by defendants and respondents Bank of America, N.A. (BofA) and U.S. Bank, National Association, as trustee for the certificate holders of Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2007-C (U.S. Bank; collectively Defendants). The Rossbergs sued Defendants to prevent them from selling the Rossbergs' home at a nonjudicial foreclosure sale after the Rossbergs defaulted on two loans secured by deeds of trust. The Rossbergs alleged several causes of action against Defendants based on BofA's unperformed promises to modify the Rossbergs' loans and Defendants failure to comply with the statutory requirements for conducting a nonjudicial foreclosure.

We affirm the trial court's order sustaining Defendants' demurrer to the first amended complaint because the Rossbergs failed to adequately allege the existence of an enforceable agreement to modify their loans or that Defendants failed to comply with the statutory requirements for conducting a nonjudicial foreclosure. We also affirm the trial court's order denying leave to amend because the Rossbergs failed to specifically show how they could amend their pleading to state a cause of action. Finally, because we affirm the trial court's judgment dismissing the Rossbergs' action, we dismiss as moot the Rossbergs' petition for writ of mandate to prevent Defendants from evicting them from their home during this appeal.

---

[1] We refer to Shaun and Brenda individually by their first names to avoid any confusion. No disrespect is intended. (*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1393, fn. 1.)

# I

## FACTS AND PROCEDURAL HISTORY[2]

In February 2007, the Rossbergs borrowed more than $600,000 from BofA. They signed a promissory note (First Note) and gave BofA a deed of trust (First Deed of Trust) on their home in Irvine, California, to secure the loan. The First Deed of Trust named BofA as the beneficiary and PRLAP, Inc. as the trustee.

Two months later, BofA entered into a "Pooling and Servicing Agreement" with Banc of America Funding Corporation as depositor, Well Fargo Bank, N.A., as master servicer and securities administrator, and U.S. Bank as trustee. The Pooling and Servicing Agreement grouped together numerous mortgages to create mortgage backed securities, which were sold to investors who purchased certificates giving them an ownership interest. The Rossbergs alleged the First Note and First Deed of Trust "were part of the Pooling and Servicing Agreement . . . [and] were transferred to Defendant U.S. Bank as trustee."

The Rossbergs borrowed an additional $58,000 from BofA in August 2007. Again, they signed a promissory note (Second Note) and gave BofA a deed of trust on their home (Second Deed of Trust) as security for the loan. The Second Deed of Trust named BofA as the beneficiary and PRLAP, Inc. as the trustee. The Rossbergs do not allege whether the Second Note and Second Deed of Trust were part of the Pooling and Servicing Agreement.

In 2007, Shaun lost his job and then suffered a debilitating illness that prevented him from looking for new work for several months. After exhausting much of their savings and available credit, the Rossbergs fell behind in their loan payments. In

---

[2]    We summarize the underlying facts as alleged in the operative first amended complaint because this appeal follows the sustaining of a demurrer. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 456.)

early 2009, they began discussions with BofA to modify their loans. These discussions dragged on for more than two and one-half years as the Rossbergs engaged in countless oral and written communications with BofA. They repeatedly sent BofA numerous tax and other financial documents to support their loan modification requests.

The Rossbergs alleged BofA employees told them on several occasions that they had been granted a loan modification. In July 2009, Esmerna, an employee in the loan modification processing department, told Brenda the Rossbergs had been granted a loan modification that would reduce their interest rate from 7.65 percent to 6.54 percent and would add $58,000 to the loan balance. In December 2010, Yazmin, another BofA loan modification employee, told Brenda the Rossbergs had been granted a loan modification that would (1) fix their variable interest rate at 7.65 percent for the term of the loan; (2) establish an impound account; and (3) require a $130,000 balloon payment at the end of the loan. Several other employees confirmed the Rossbergs had been granted these loan modifications.[3] All of these employees promised the Rossbergs would

---

[3] The Rossbergs contend they attached three letters to their pleading in which BofA approved loan modifications, but the attached letters do not support the Rossbergs' contention. Two of the letters do not contain the language the Rossbergs quote in their pleading and the third letter merely states BofA has "approved your request for assistance." The third letter does not refer to modifying the Rossbergs' loans, let alone the specific terms of any modification; it merely asks the Rossbergs to contact BofA to discuss available options for resolving their loan delinquency.

The Rossbergs also contend BofA admitted the Rossbergs received loan modifications in two letters it sent after the trial court entered judgment. Because the operative pleading contains no allegations regarding these letters and they postdate the trial court's ruling, we may not consider them in evaluating the adequacy of the Rossbergs' allegations. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 8-9, fn. 3 (*Hensler*) [in ruling on a demurrer, courts are limited to allegations appearing on the face of the pleadings and facts properly subject to judicial notice]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered'"].) To the extent we may consider these letters in deciding whether we should grant the Rossbergs leave to amend, the letters merely state BofA twice offered the Rossbergs a loan modification and

receive documents to confirm and implement these loan modifications, but the Rossbergs never received those documents and BofA never implemented either loan modification. The Rossbergs did not allege what, if any payments, they made during their loan modification negotiations with BofA.

On September 22, 2009, as the Rossbergs continued their efforts to negotiate a loan modification, BofA executed a Substitution of Trustee designating Cal-Western Reconveyance Corporation (Cal-Western) as the new trustee on the First Deed of Trust. BofA did not have a notary public acknowledge the Substitution of Trustee until November 11, 2009, and it did not record the document until November 18, 2009.

Three days after BofA executed the Substitution of Trustee, and nearly two months *before* BofA recorded that document, Cal-Western executed a Notice of Default as "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary" under the First Deed of Trust. The Notice of Default informed the Rossbergs they were nine months behind on their loan and the beneficiary had elected to start the nonjudicial foreclosure process on their property. Cal-Western recorded the Notice of Default on September 28, 2009, three days after executing it.

In June 2010, Cal-Western recorded a Notice of Trustee's Sale (Notice of Sale) under the First Deed of Trust. The Notice of Sale originally set July 14, 2010, as the sale date, but the date for the sale was rescheduled several times. Attached to the Notice of Sale was a declaration executed by BAC Home Loans Servicing, LP (BAC) that stated BAC obtained an exemption from certain statutory time limits for giving notice of the sale, but the declaration does not explain BAC's relationship to the First Deed of Trust or the Rossbergs' loan.

the Rossbergs rejected those offers. Accordingly, the letters fail to show an agreement was ever reached on a specific loan modification.

5

In January 2011, Cal-Western, as Bank of America's attorney in fact, executed and recorded an "Assignment of Deed of Trust" that transferred all beneficial interest in the First Deed of Trust and First Note to "U.S. Bank, National Association, as Trustee for the Certificateholders of Banc of America Funding Corporation, Mortgage Pass-Through Certificates, Series 2007-C."

The Rossbergs filed this action in April 2011 to block the foreclosure sale. After the trial court sustained a demurrer to the original complaint, the Rossbergs filed a first amended complaint. The first amended complaint named BofA, U.S. Bank, and Cal-Western as defendants and alleged the following causes of action: (1) violation of Civil Code section 2923.5;[4] (2) violation of section 2924 et seq.; (3) fraud; (4) violation of Business and Professions Code section 17200; (5) breach of contract; (6) declaratory relief; and (7) quiet title.[5] The numerous exhibits the Rossbergs attached to the first amended complaint included the First Deed of Trust, portions of the Pooling and Servicing Agreement, the Substitution of Trustee, the Notice of Default, the Notice of Sale, and the Assignment of Deed of Trust.

The Rossbergs alleged the nonjudicial foreclosure sale could not proceed because (1) BofA failed to satisfy its statutory duty to contact the Rossbergs to assess their financial situation and explore options for avoiding foreclosure before it recorded the Notice of Default; (2) the Notice of Default is void because Cal-Western recorded the Notice before it was designated as trustee under the First Deed of Trust; (3) Cal-Western lacked authority to take any action as trustee under the First Deed of Trust because the Substitution of Trustee designating Cal-Western as trustee is a forgery; and (4) it is unclear who held the First Note and First Deed of Trust when the Notice of Default and Notice of Sale were recorded because the Servicing and Pool Agreement transferred the

---

[4]    All statutory references are to the Civil Code unless otherwise stated.

[5]    Cal-Western is not a party to this appeal.

6

First Note and First Deed of Trust to U.S. Bank in April 2007, but the Assignment of Deed of Trust purported to make that same transfer in January 2011. The Rossbergs also alleged BofA committed fraud when it promised to grant them a loan modification but failed to implement the promised loan modification.[6]

BofA and U.S. Bank demurred to the first amended complaint on the ground each cause of action failed to allege sufficient facts to state a claim against either defendant. The trial court sustained the demurrer on every cause of action without leave to amend and entered a judgment of dismissal. The Rossbergs timely appealed.

Shortly after the trial court dismissed the Rossbergs' action, Cal-Western proceeded with the nonjudicial foreclosure and conducted the public sale because the Rossbergs failed to seek a stay of enforcement regarding the trial court's judgment. U.S. Bank purchased the property at the sale for a credit bid and then filed an unlawful detainer action to obtain possession.

In September 2012, the Rossbergs filed a petition for writ of mandate to prevent "BofA" from selling the property to a third party or proceeding with the unlawful detainer action during this appeal. We issued an order (1) treating the Rossbergs' petition as a petition for writ of supersedeas; (2) consolidating the Rossbergs' appeal from the judgment and their writ petition; and (3) inviting an informal response from BofA. BofA did not file a response and no further action was taken on the petition.

In July 2013, U.S. Bank obtained a judgment of possession against the Rossbergs in the unlawful detainer action after the Rossbergs failed to appear for trial.

---

[6] The first amended complaint and the Rossbergs' opening brief include allegations and contentions suggesting BofA had a duty to grant the Rossbergs a loan modification, but their reply clarifies that the Rossbergs do not contend BofA had a duty to grant them a modification. We therefore do not address that issue.

II

DISCUSSION

A.      *Standard of Review and the Rossbergs' Burden on Appeal*

When the trial court sustains a demurrer, we review the complaint de novo to determine whether it alleges facts stating a cause of action on any possible legal theory.  (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487 (*Koszdin*).) """"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law."'"  [Citations.]"  (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)  "Further, 'we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' [Citations.]"  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 528.)  We also "consider matters that must or may be judicially noticed."[7]  (*Hoffman*, at p. 400.)

Nonetheless, "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.  [Citation.]  We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings. [Citation.]"  (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 (*Martin*); *Sui v. Price* (2011) 196 Cal.App.4th 933, 938 (*Sui*).)

---

[7]      The Rossbergs argue the trial court erred by failing to consider their opposition to Defendants' demurrer, considering evidence Defendants' counsel offered at the hearing on the demurrer, and requiring the Rossbergs to present evidence to overcome the demurrer.  The record does not support any of these contentions.  Nonetheless, they are irrelevant because we conduct a de novo review when determining the adequacy of the Rossbergs' pleading against the demurrer.

"When a demurrer is sustained without leave to amend, we also must decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Koszdin*, *supra*, 186 Cal.App.4th at p. 487.) "The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44 (*Rakestraw*).)

B.    *Legal Background Regarding Deeds of Trust and Nonjudicial Foreclosures*

"The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507 (*Jenkins*).) "A deed of trust . . . conveys title to real property from the trustor-debtor to a third party trustee to secure the payment of a debt owed to the beneficiary-creditor under a promissory note. [Citations.] The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary-creditor to [foreclose] on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note. [Citations.]" (*Id*. at p. 508.)

"[A]lthough the deed of trust technically conveys title to the real property from the trustor-debtor to the trustee, the extent of the trustee's interest in the property is limited to what is necessary to enforce the operative provisions of the deed of trust." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 508.) Generally, a deed of trust requires the

9

trustee only to perform one of two "mutually exclusive duties:  (1) should the trustor-debtor default on the debt, the trustee must initiate foreclosure on the property for the benefit of the beneficiary-creditor; or (2) should the trustor-debtor satisfy the secured debt, the trustee must reconvey title to the real property back to the trustor-debtor, extinguishing the security device." (*Ibid*.)  Despite the security interest the deed of trust creates, "the trustor-debtor retains all incidents of ownership with regard to the real property, including the rights of possession and sale." (*Ibid*.)

When a trustor-debtor defaults "on a debt secured by a deed of trust, the beneficiary-creditor may elect to judicially or nonjudicially foreclose on the real property security.  Sections 2924 through 2924k set forth a 'comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust.'  [Citation.]" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 508, original italics.) "To initiate the nonjudicial foreclosure process, the 'trustee, mortgagee, or beneficiary, or any of their authorized agents,' must record a notice of default and election to sell. [Citation.]" (*Id*. at p. 509.)  The "mortgagee, trustee, or other person authorized to take the sale" must then wait three months before proceeding with the sale.  (§ 2924, subd. (a)(3); *Jenkins*, at p. 509.)  "After the three-month period has elapsed, a notice of sale must be published, posted, recorded and mailed 20 days before the foreclosure sale." (*Jenkins*, at p. 509.)  The property must be sold at a public auction to the highest bidder, but before the sale occurs the statutory scheme provides the trustor-debtor with several opportunities to cure the default and avoid losing the property.  (*Ibid*.)

The statutory scheme authorizing nonjudicial foreclosures "'"" cover[s] every aspect of [the] exercise of [a] power of sale contained in a deed of trust." [Citation.] . . .' [Citation.]" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 509.)  "'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]"

10

(*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 441 (*Debrunner*).)

"""The purposes of this comprehensive scheme are threefold:  (1) to provide the [beneficiary-creditor] with a quick, inexpensive and efficient remedy against a defaulting [trustor-debtor]; (2) to protect the [trustor-debtor] from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." [Citation.]'  [Citation.]  'Significantly, "[n]onjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption." [Citation.]'  [Citation.]"  (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 509-510.)

A nonjudicial foreclosure is "presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270 (*Fontenot*) [applying presumption in action for wrongful foreclosure brought after sale conducted]; *Debrunner*, *supra*, 204 Cal.App.4th at p. 443 [applying presumption in action to prevent nonjudicial foreclosure sale from occurring].)  A trustor-debtor seeking to prevent a nonjudicial foreclosure based on the foreclosing entity's purported lack of authority therefore must "affirmatively" plead facts demonstrating a lack of authority.  (*Fontenot*, at p. 270; *Jenkins*, *supra*, 216 Cal.App.4th at p. 512 [to state a cause of action challenging a foreclosing entity's authority to initiate and conduct a nonjudicial foreclosure, the trustor-debtor must allege a "*specific factual basis*" establishing a lack of authority (original italics)]; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155-1156.)  A trustor-debtor may not bring a preemptive lawsuit seeking to force the foreclosing entity to prove its authority before it conducts a nonjudicial foreclosure. (*Jenkins*, at pp. 511-513.)  Allowing a judicial action to prevent a nonjudicial foreclosure without specific factual allegations showing a lack of authority "would unnecessarily

11

'interject the courts into [the] comprehensive nonjudicial scheme' created by the Legislature, and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]' [Citation.]" (*Id*. at p. 512; see also *Gomes*, at pp. 1154-1156.)

C.     *The Rossbergs Failed to Allege a Cause of Action on Any Theory*

1.     First Cause of Action for Violation of Section 2923.5

"In 2008, the Legislature enacted . . . section 2923.5 in response to the foreclosure crisis." (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 525.) When Cal-Western recorded the Notice of Default in 2009, section 2923.5 prohibited a "mortgagee, trustee, beneficiary, or authorized agent" from recording a notice of default until 30 days after (1) "contact[ing] the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure"; or (2) making diligent efforts to contact the borrower, including "sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified counseling agency," "attempt[ing] to contact the borrower by telephone at least three times at different hours and on different days," and "send[ing] a certified letter, with return receipt requested." (Former § 2923.5, subds. (a) & (g).) Former section 2923.5 further required the notice of default include a declaration stating "the mortgagee, beneficiary, or authorized agent . . . has contacted the borrower [or] tried with due diligence to contact the borrower as required by this section . . . ."[8] (Former §2923.5, subd. (b).)

---

[8]     The Legislature amended section 2923.5 in 2009 and again in 2012 to modify some of its requirements. (Stats. 2009, ch. 43, § 1; Stats. 2012, ch. 86, § 4.) The basic requirements nonetheless remain that a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default until more than 30 days after they contact the borrower to assess the borrower's financial situation and explore options to avoid foreclosure, or make diligent efforts to contact the borrower for those purposes. The current version continues to require a notice of default include a

The Rossbergs concede the declaration section 2923.5 requires as part of a notice of default may simply track the statutory language regarding the mortgagee, beneficiary, or authorized agent's efforts to contact the borrower and the declaration need not be under penalty of perjury. (See *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 232-235.) The Rossbergs further concede Cal-Western's declaration in its recorded Notice of Default satisfied the statute's requirements. Nonetheless, the Rossbergs argue they stated a cause of action under section 2923.5 because the declaration in the Notice of Default is false. According to the Rossbergs, neither BofA nor any of its agents contacted them to assess their financial situation and explore options for avoiding foreclosure before Cal-Western recorded the Notice of Default.

A borrower may state a cause of action under section 2923.5 by alleging the lender did not actually contact the borrower or otherwise make the required efforts to contact the borrower despite a contrary declaration in the recorded notice of default. (*Skov v. U.S. Bank National Assn.* (2012) 207 Cal.App.4th 690, 696.) The Rossbergs, however, failed to state a cause of action on this theory because they did not adequately allege BofA and its agents failed to contact them to assess their financial situation and explore options for avoiding foreclosure at least 30 days before Cal-Western recorded the Notice of Default.

The first amended complaint alleged, "*In the 30-days leading up* to [the date on which Cal-Western recorded the Notice of Default], no in person meeting took place and no telephonic conversation took place." (Italics added.) This does not allege a section 2923.5 violation because the statute requires the contact to occur *more* than 30 days before the notice of default is recorded, not during "the 30 days leading up to" the recording. Moreover, the first amended complaint alleged the Rossbergs had multiple

declaration stating the mortgage servicer contacted the borrower or made diligent efforts to do so. (§2923.5, subds. (a), (b), (e).)

telephone conversations with BofA regarding a possible loan modification during July 2009, which was more than 30 days before Cal-Western recorded the Notice of Default in late September 2009. The Rossbergs also attached to the first amended complaint several letters they received from BofA more than 30 days before Cal-Western recorded the Notice of Default. These letters referred to programs designed to help borrowers avoid foreclosure and requested the Rossbergs contact BofA to discuss those programs. Accordingly, the trial court properly sustained the demurrer to the Rossbergs' first cause of action.[9]

        2.      Second Cause of Action for Violation of Section 2924 et seq.

This cause of action sought to enjoin Defendants from foreclosing on the Rossbergs' home because Defendants failed to record a proper notice of default. The Rossbergs alleged the Notice of Default was invalid because Cal-Western lacked authority to record it, and therefore the entire nonjudicial foreclosure process was void. Although the Rossbergs alleged several reasons for Cal-Western's purported lack of authority, they misconstrue the requirements for conducting a nonjudicial foreclosure and failed to allege any defect in the process that prevented Cal-Western from validly recording the Notice of Default. We therefore affirm the trial court's decision sustaining the demurrer to this cause of action.

The Rossbergs first contend Cal-Western lacked authority because it was not yet designated as trustee when it recorded the Notice of Default. According to the Rossbergs, Cal-Western did not become trustee until nearly two months *after* it recorded the Notice of Default when a notary acknowledged the Substitution of Trustee and

---

[9]      Defendants argue all of the Rossbergs' causes of action fail as a matter of law because the Rossbergs did not tender the full amount due and owing on the loans before bringing this action. Because we affirm the trial court's ruling on other grounds, we do not address whether a full tender was required before the Rossbergs could properly bring this action.

14

Cal-Western recorded the Substitution. Section 2934a, however, expressly authorized Cal-Western to record the Notice of Default because the Substitution of Trustee was executed *before* Cal-Western recorded the Notice of Default even though the Substitution of Trustee was not notarized or recorded until nearly two months later.

Specifically, section 2934a states, "[a] trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the . . . deed of trust for all purposes *from the date the substitution is executed . . . .*" (§ 2934a, subd. (d), italics added.) That statute also provides a substituted trustee may record a notice of default *before* the substitution empowering the trustee to act is recorded. (§ 2934a, subd. (b); *Debrunner*, *supra*, 204 Cal.App.4th at pp. 443-444.) Here, the Substitution of Trustee attached to the first amended complaint shows BofA executed it on September 22, 2009, and recorded it on November 18, 2009. Accordingly, Cal-Western was authorized to act as trustee starting on September 22, 2009, and validly recorded the Notice of Default six days later.

In a related argument, the Rossbergs contend the Substitution of Trustee must be a forgery because a notary did not acknowledge the signature on that document until nearly two months after BofA signed it. This argument assumes a notary must acknowledge a document at the time it is executed and any delay between the execution and acknowledgment renders the document invalid. That is not the law and the Rossbergs do not cite any authority to support that proposition. Nothing requires a notary to acknowledge a document at the same time it is executed, and even a lengthy delay between the execution of the document and its acknowledgment does not invalidate the document. (*Wilson v. Pacific Coast Title Ins. Co.* (1951) 106 Cal.App.2d 599, 602 [assignment of beneficial interest in deed of trust validly transferred title despite notary acknowledging assignment nearly two years after it was executed]; *Pedersen v. Greenpoint Mortgage Funding, Inc.* (E.D.Cal 2012) 900 F.Supp.2d 1071, 1083 [same].)

15

The Rossbergs allege no other basis for their contention the Substitution of Trustee is a forgery.

The Rossbergs next contend Cal-Western lacked authority to record the Notice of Default because BofA was not the beneficiary under the First Deed of Trust when it executed the Substitution of Trustee designating Cal-Western as trustee. According to the Rossbergs, BofA transferred the First Note and First Deed of Trust to U.S. Bank in April 2007, when it entered into the Pooling and Servicing Agreement, and therefore only U.S. Bank could have validly executed the Substitution of Trustee in September 2009.[10] The allegation BofA could not properly designate Cal-Western as trustee, however, does not state a claim to invalidate the Notice of Default.

Section 2924 authorizes a notice of default to be recorded by the "trustee, mortgagee, or beneficiary, *or any of their authorized agents*." (§ 2924, subd. (a)(1), italics added.) The Notice of Default did not state Cal-Western was acting as a substituted trustee designated by BofA. Rather, the Notice of Default stated Cal-Western "is either the original trustee, the duly appointed substituted trustee, *or acting as agent for the trustee or beneficiary* under [the First Deed of Trust]." (Italics added.) Accordingly, to state a claim based on Cal-Western's purported lack of authority to record the Notice of Default, the Rossbergs had to allege not only that Cal-Western was not the trustee under the First Deed of Trust, but also that Cal-Western was not the agent of the trustee

_____

[10]    In their brief, the Rossbergs mistakenly refer to U.S. Bank as the trustee under the First Deed of Trust. The Rossbergs, however, fail to recognize the proper legal effect of the Pooling and Servicing Agreement. That Agreement pooled together large numbers of mortgages to create investment instruments potential investors could purchase. Under the Pooling and Servicing Agreement, the beneficial interests in the mortgages (more specifically, the underlying promissory notes and deeds of trusts) were transferred to U.S. Bank, who acted as trustee and held the beneficial interests in the promissory notes and deeds of trusts for the investors. The Pooling and Servicing Agreement did not make U.S. Bank the trustee under the First Deed of Trust or any other deed of trust.

16

or beneficiary. (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 515-516 [when notice of default states entity recorded it "'as agent for beneficiary,'" the debtor must allege facts showing the entity was not the beneficiary's agent to state a claim]; *Fontenot*, *supra*, 198 Cal.App.4th at p. 270 [to state cause of action based on foreclosing entity's lack of authority borrower must "affirmatively" plead facts establishing lack of authority].) The Rossbergs made no such allegations. Indeed, although they alleged BofA transferred the First Deed of Trust to U.S. Bank more than two years before Cal-Western recorded the Notice of Default, the Rossbergs fail to allege U.S. Bank, as the beneficiary under the First Deed of Trust, did not authorize Cal-Western to record the Notice of Default as its agent. Accordingly, assuming Cal-Western lacked authority to act as trustee when it recorded the Notice of Default, the Rossbergs nonetheless failed to allege sufficient facts establishing Cal-Western lacked authority to record the Notice as agent for the trustee or beneficiary.

Finally, the Rossbergs contend section 2932.5 rendered the Notice of Default invalid because Cal-Western recorded the Notice *before* U.S. Bank recorded its beneficial interest in the First Deed of Trust. According to the Rossbergs, BofA transferred the First Deed of Trust to U.S. Bank in April 2007, and section 2932.5 required U.S. Bank to record its beneficial interest in the First Deed of Trust before anyone could initiate nonjudicial foreclosure proceedings on its behalf. Because U.S. Bank did not record the Assignment of Deed of Trust until more than a year *after* Cal-Western recorded the Notice of Default, the Rossbergs contend the Notice is void. The Rossbergs are mistaken because section 2932.5 does not apply to deeds of trust.

Section 2932.5 states, "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee *if the assignment is duly acknowledged and recorded*."

17

(Italics added.)  "It has been established since 1908 that this statutory requirement that an assignment of the beneficial interest in a debt secured by real property must be recorded in order for the assignee to exercise the power of sale applies only to a mortgage and not to a deed of trust."  (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 122.)

The Rossbergs cite a United States Bankruptcy Court case that reached the opposite conclusion and held section 2932.5 can be applied to deeds of trust.  (See *In re Cruz* (Bankr. S.D.Cal 2011) 457 B.R. 806, 814-817.)  At least one California appellate court, however, has refused to follow *Cruz* because it misunderstood how a deed of trust operates.  (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 335-336.)  The *Haynes* court explained, "Section 2932.5 requires the recorded assignment of a mortgage so that a prospective purchaser knows that the mortgagee has the authority to exercise the power of sale.  This is not necessary when a deed of trust is involved, as the trustee conducts the sale and transfers title.  [Citation.]  It is the trustee's holding and transferring of title that underlies the application of different recording requirements than those required of mortgagees under section 2932.5."  (*Haynes*, at p. 336.)  Based on *Haynes*, we recently held "section 2932.5 [is] inapplicable to trust deeds."  (*Jenkins*, *supra*, 216 Cal.App.4th at p. 518.)  Accordingly, nothing in section 2932.5 rendered the Notice of Default invalid.[11]

_____

[11]    The Rossbergs also question the validity of the nonjudicial foreclosure on their home because BAC attached a declaration to the Notice of Sale and the Rossbergs claim it was unclear what role BAC had regarding the nonjudicial foreclosure process or their loans.  The declaration, however, solely relates to the servicing of the Rossbergs' loan and the timing of the Notice of Sale.  BAC did not sign the Notice of Sale nor did it claim to have any role in the nonjudicial foreclosure process.  The Rossbergs provide no explanation or authority to show that BAC's declaration attached to the Notice of Sale had any impact on the validity of the nonjudicial foreclosure process.  Accordingly the Rossbergs forfeited any claim based on BAC signing the declaration.  (See, e.g., *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellant forfeited challenge by failing to present reasoned argument and explanation].)

18

3.      Third Cause of Action for Fraud

This cause of action seeks to state a fraud claim based on Defendants' promises to modify the Rossbergs' loans.  Promissory fraud or false promise "'is a subspecies of the action for fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.'  [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973-974; § 1572, subd. (4) ["Actual fraud . . . consists in any of the following acts:  [¶] . . . [¶] A promise made without any intention of performing it"].)

"The elements of promissory fraud . . . are:  (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453.)  As with any other form of fraud, each element of a promissory fraud claim must be alleged with particularity.  (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1059-1060 (*Beckwith*).)

Here, the Rossbergs alleged specific BofA employees promised on multiple occasions that the Rossbergs had been granted specific modifications to their loans, but neither BofA nor U.S. Bank ever intended to modify the Rossbergs' loans.  The Rossbergs allege they relied on these promises by "execut[ing] continual loan modification papers and disclos[ing] their confidential, private and personal information."  Finally, the Rossbergs allege their reliance on the promised loan modifications caused them "hundreds of thousands of dollars" in damages.  These allegations fail to state a promissory fraud claim because they fail to specifically allege the harm the Rossbergs suffered and how the Rossbergs' reliance on the promised loan modifications caused them harm.

19

"'A plaintiff asserting fraud by misrepresentation is obliged to . . . "'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom.''' [Citation.]" (*Beckwith*, *supra*, 205 Cal.App.4th at p. 1062.) This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages. (*Ibid.*)

"'"'Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages.''"' [Citation.]" (*Beckwith*, *supra*, 205 Cal.App.4th at p. 1064.) Indeed, "'"[a]ssuming . . . a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes*." [Citation.]' [Citation.] If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation *cannot* be alleged and a fraud cause of action cannot be sustained." (*Ibid.*, original italics.)

The Rossbergs did not satisfy these standards. They did not allege any specific damages they suffered as a result of their reliance on the promised loan modifications nor did they allege how their execution of loan modification papers and disclosure of confidential information caused those unspecified damages. For example, the Rossbergs did not allege BofA or U.S. Bank used the confidential information the Rossbergs disclosed for an improper purpose or in any way that injured the Rossbergs. Indeed, there are no allegations at all regarding how BofA or U.S. Bank used the confidential information the Rossbergs disclosed. The logical inference is that BofA used the information to evaluate the Rossbergs' requests for a loan modification, but there is nothing improper about that. Significantly, the Rossbergs do not allege their reliance on the promised loan modifications caused them to default on their loans or prevented them from curing their existing defaults. In short, the Rossbergs failed to

allege any connection between their reliance on the promised loan modifications and any specific damages that reliance caused.

In their brief, the Rossbergs argue BofA's promised loan modifications induced them to continue making loan payments to BofA instead of obtaining a replacement loan. The Rossbergs, however, did not allege this theory of reliance in their first amended complaint and therefore we may not consider this argument in evaluating whether they have shown a viable fraud cause of action. (*Hensler*, *supra*, 8 Cal.4th at pp. 8-9, fn. 3.) Moreover, the Rossbergs fail to explain how continuing to pay on their loans caused them damages when BofA credited those payments toward the amount they undisputedly owed and allowed them to remain in their home. The Rossbergs also failed to provide facts showing they had sufficient equity in their home and sufficient income to qualify for a replacement loan. The conclusory allegation they would have obtained a replacement loan does not state a cause of action.

The Rossbergs also argue the promised loan modifications induced them not to sell their home "early on" and payoff BofA before their home lost a significant amount of its value. Again, we cannot consider this theory because it was not alleged in the first amended complaint. (*Hensler*, *supra*, 8 Cal.4th at pp. 8-9, fn. 3.) Moreover, the Rossbergs failed to provide sufficient facts to support this theory. For example, they do not allege the value of their home "early on," the value of their home when BofA first promised a loan modification, the amount they owed BofA when it first promised a loan modification, or whether they could have sold their home for more than they owed. The conclusory allegation the Rossbergs could have sold their home and paid off their loans does not state a cause of action.[12]

---

[12] In their brief, the Rossbergs also contend their fraud cause of action was based on the fraudulent nonjudicial foreclosure documents and their false notarizations. The Rossbergs, however, do not allege they did anything or refrained from doing anything based on the various nonjudicial foreclosure documents such as the Notice of Default or the Notice of Sale. Moreover, as explained above, the Rossbergs failed to

21

Next, the Rossbergs contend an exception to the particularity requirement exists when the defendant necessarily possesses full information concerning the facts supporting the alleged cause of action. Although the Rossbergs are correct that "[l]ess specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy' [citation]" (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217), that exception does not apply to the Rossbergs' failure to specifically allege their damages and how their reliance on BofA's promises caused those damages. This exception is usually applied to the elements regarding a defendant's representations and intent, not the elements regarding the plaintiff's own damages and reliance. Here, Defendants would not necessarily possess full information regarding the Rossbergs' damages or how the Rossbergs' reliance caused those damages without the Rossbergs providing that information.

Finally, the Rossbergs contend *Auerbach v. Great Western Bank* (1999) 74 Cal.App.4th 1172, supports their fraud cause of action because it upheld part of a damages award based on a lender's false promises it would grant a loan modification if the borrower continued to make payments on the underlying loan. The Rossbergs are mistaken. *Auerbach* did not address whether the borrower adequately alleged a promissory fraud claim. The issues in *Auerbach* concerned the type of out-of-pocket damages recoverable on a promissory fraud claim. (*Id.* at p. 1175.) The *Auerbach* court expressly stated it was not deciding "whether a lender's false promises made to induce nonrecourse borrowers to continue to make loan payments can ever support a claim of fraud." (*Id.* at p. 1187.)

---

adequately allege the nonjudicial foreclosure documents were forged or otherwise false in any material way.

22

4. Fourth Cause of Action for Violation of Business and Professions Code Section 17200 et seq.

Business and Professions Code section 17200 et seq. is commonly referred to as the Unfair Competition Law (UCL). "'[T]o protect both consumers and competitors by promoting fair competition in commercial markets for goods and services' [citation], the 'UCL prohibits, and provides civil remedies for, unfair competition.' [Citation.]" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 520.) "[T]he UCL's 'coverage is "sweeping, embracing '"anything that can properly be called a business practice and that at the same time is forbidden by law."'" [Citation.]' [Citation.] Furthermore, the UCL creates '"three varieties of unfair competition—acts or practices which are *unlawful*, or *unfair*, or *fraudulent*."' [Citation.]" (*Ibid*., original italics.)

The Rossbergs argue their UCL claim is "well pled" because they "allege fraud, and breach of statutes. Further, in terms of unfairness, it has been held that refusal to communicate with a borrower, and false communications as to loan status (e.g. the granting of the loan modification)[] are unfair. The complaint alleges over 100 ignored phone calls, and false communications. Furthermore, failing to abide by a valid court order, such as in the Stipulated Judgment with the California Attorney General is per se against California public policy and is unfair."

The foregoing paragraph is the Rossbergs' entire argument and explanation as to why they adequately alleged a UCL claim. They cite no authority showing what is required to allege a fraud claim under the UCL and make no attempt to explain how the first amended complaint's allegations adequately state such a claim. Similarly, although they contend they stated a UCL claim by alleging "breach of statutes," the Rossbergs fail to identify which statutes Defendants breached or how they violated those statutes. As explained above, the Rossbergs did not allege a breach of section 2923.5 or section 2924 et seq. The Stipulated Judgment to which the Rossbergs refer was entered into regarding Countrywide Financial Corporation's business practices before BofA acquired

23

Countrywide, does not require BofA to grant the Rossbergs or anyone else a loan modification, and may not be enforced by the Rossbergs because they are not parties to it. Moreover, the Rossbergs fail to identify any provision in the Stipulated Judgment that BofA or U.S. Bank allegedly breached. Finally, the Rossbergs fail to cite any authority to explain what constitutes an unfair business practice or act under the UCL or to support their statement "it has been held that refusal to communicate with a borrower, and false communications as to loan status . . . are unfair [under the UCL]."

As the plaintiffs and appellants, the Rossbergs bore the burden to show how the alleged facts are sufficient to establish every element of this cause of action. (*Martin*, *supra*, 173 Cal.App.4th at p. 1031; see also *Sui*, *supra*, 196 Cal.App.4th at p. 938.) But the Rossbergs failed to provide any reasoned explanation or cite any authority to support the statements in their brief. We therefore treat their challenge to the trial court's ruling sustaining the demurrer to the UCL claim as waived. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*) ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 (*Paulus*) ["'"Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"'"].) "We are not bound to develop [the Rossbergs'] arguments for them." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

5. Fifth Cause of Action for Breach of Contract

This cause of action alleged the Rossbergs and Defendants entered into a "partially written, partially verbal, and verbal agreement" to modify the Rossbergs' loans based on BofA's oral representations that it had granted the Rossbergs' loan modification request and the statements on BofA's Web site describing its loan modification programs.

24

This cause of action fails as a matter of law because the Rossbergs failed to allege they entered into a signed, written agreement with BofA to modify their loans.

The statute of frauds requires any contract subject to its provisions to be memorialized in a writing subscribed by the party to be charged or by the party's agent. (§ 1624; *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552.) An agreement for the sale of real property or an interest in real property comes within the statute of frauds. That includes a promissory note and a deed of trust securing performance under the note. (*Secrest*, at p. 552.) "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." (*Id*. at p. 553.) In *Secrest*, we therefore held a forbearance agreement, in which a lender agreed not to foreclose on the borrowers' home if the borrowers satisfied certain conditions, was subject to the statute of frauds because it modified the original promissory note and deed of trust the borrowers executed. (*Ibid*.)

Here, the Rossbergs alleged the loan modification agreement they entered into with BofA modified the terms of their promissory note and deed of trust by changing the interest rate and principal balance, among other things. The statute of frauds therefore required the loan modification agreement to be in a writing signed by BofA. The Rossbergs, however, concede there is no written loan modification agreement signed by BofA. They therefore failed to allege a cause of action for breach of the purported loan modification agreement.

The Rossbergs contend their loan modification agreement with BofA was not subject to the statute of frauds because the "object of the [loan modification] agreement was to arrange a refinancing loan," not to convey an interest in real property. This argument fails because it contradicts controlling precedent, as we explained in *Secrest*.

The Rossbergs also contend we should reject BofA's argument that the statute of frauds bars this cause of action because BofA never signs written agreements

25

granting homeowner loan modifications. The Rossbergs, however, base their argument on facts not alleged on the face of their pleading. Because the Rossbergs sought to allege a contract subject to the statute of frauds, they must allege a written contract signed by BofA and their failure to do so is a legal issue properly decided on demurrer. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 7:58, p. 7(I)-33 (rev. # 1 2013) citing *Parker v. Solomon* (1959) 171 Cal.App.2d 125, 136.) Whether BofA routinely signs a written agreement when it modifies a borrower's loan is irrelevant. The statute of frauds requires a signed writing and therefore the Rossbergs must allege facts establishing the existence of a signed writing to state this cause of action.

6. Sixth Cause of Action for Declaratory Relief and Seventh Cause of Action for Quiet Title

The sixth cause of action seeks a judicial declaration that the Substitution of Trustee, the Notice of Default, and the Notice of Sale are void based on the defects discussed above concerning the first and second causes of action, and also a judicial declaration modifying the First Note, First Deed of Trust, Second Note, and Second Deed of Trust to conform to the loan modifications BofA promised the Rossbergs. The seventh cause of action seeks to quiet title against Defendants and Cal-Western "for the reasons set forth hereinabove." The Rossbergs, however, fail to explain how the trial court erred in sustaining the demurrer to these causes of action or why they alleged sufficient facts to state these claims.

The Rossbergs' brief addresses these two causes of action in a single paragraph, citing *Curry v. Moody* (1995) 40 Cal.App.4th 1547, and *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698. Both of these cases address whether a party may recover contractual attorney fees under section 1717 as the prevailing party in an action on a contract. (*Curry*, at pp. 1556-1557; *Exxess*, at p. 708.) They do not address what is required to state a declaratory relief or quiet title claim, and the Rossbergs

26

provide no explanation regarding how these cases show the trial court erroneously sustained Defendants' demurrer to these causes of action. The Rossbergs therefore failed to meet their burden to show they alleged sufficient facts to state these causes of action. (*Martin*, *supra*, 173 Cal.App.4th at p. 1031; see also *Sui*, *supra*, 196 Cal.App.4th at p. 938.) We also treat the Rossbergs' challenge to the ruling sustaining the demurrer to these causes of action as waived because the Rossbergs did not provide any reasoned argument to support their challenge. (*Nelson*, *supra*, 172 Cal.App.4th at p. 862; *Paulus*, *supra*, 139 Cal.App.4th at p. 685.)

D.      *The Rossbergs Are Not Entitled to Leave to Amend*

In their reply, the Rossbergs invoke California's liberal policy in favor of permitting amended pleadings and argue we should grant them leave to amend on any claim where they failed to adequately allege a cause of action. As explained above, however, it is not sufficient for the Rossbergs to assert "an abstract right to amend." (*Rakestraw*, *supra*, 81 Cal.App.4th at p. 43.) Instead, they must "clearly and specifically" set forth the legal authority for the claims they contend they can allege, the elements of each of those claims, and the specific factual allegations that would establish each of those elements. (*Ibid.*) The Rossbergs made no attempt to meet this burden.

## III

### DISPOSITION

The judgment is affirmed.  Because we affirm the trial court's judgment dismissing the Rossbergs' action, we also dismiss the petition for writ of mandate as moot.  Defendants shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.

Filed 9/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN SHAUN ROSSBERG et al., | |
| Plaintiffs and Appellants, | G047028 (cons. with G047355) |
| | (Super. Ct. No. 30-2011-00462732) |
| v. | ORDER (1) DENYING PETITION FOR REHEARING; (2) MODIFYING OPINION; AND (3) GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| BANK OF AMERICA, N.A., et al., | |
| Defendants and Respondents. | |

Plaintiffs and appellants Alan Shaun Rossberg and Brenda Rossberg's petition for rehearing is DENIED.

It is ordered that the opinion filed in the above-entitled matter on August 27, 2013, is hereby MODIFIED as follows:

1. On page 2, the last sentence at the bottom of the page, beginning with "Finally, because we affirm the trial court's judgment," the words "evicting them from their home" are deleted and replaced with the words "initiating eviction proceedings" so the sentence reads:

Finally, because we affirm the trial court's judgment dismissing the Rossbergs' action, we dismiss as moot the Rossbergs' petition for writ of mandate to prevent Defendants from initiating eviction proceedings during this appeal.

2. On page 6, the fourth item in the numbered list in the last paragraph on the bottom of the page, beginning with "(4) it is unclear who held the First Note," delete the words "Servicing and Pool Agreement" and replace them with the words "Pooling and Servicing Agreement" so the fourth item in the list reads:

(4) it is unclear who held the First Note and First Deed of Trust when the Notice of Default and Notice of Sale were recorded because the Pooling and Servicing Agreement transferred the First Note and First Deed of Trust to U.S. Bank in April 2007, but the Assignment of Deed of Trust purported to make that same transfer in January 2011.

3. On page 14, the first sentence of the last paragraph at the bottom of the page, beginning with "The Rossbergs first contend," the word "was" is deleted and replaced with the word "had" and the word "yet" is deleted and replaced with the word "been" so the sentence reads:

The Rossbergs first contend Cal-Western lacked authority because it had not been designated as trustee when it recorded the Notice of Default.

4. On page 16, the second sentence of the second full paragraph, beginning with "The Notice of Default did not state," insert the words "BofA designated" between the words "state" and "Cal-Western," delete the words "was acting" and replace them with the words "to act," and delete the words "designated by BofA" at the end of the sentence so the sentence reads:

The Notice of Default did not state BofA designated Cal-Western to act as a substituted trustee.

2

5. On page 17, the bracketed statement following the citation to the *Jenkins* case at the top of the page, insert the words "to state a claim" between the words "debtor" and "must" and delete the words "to state a claim" at the end of the bracketed statement so the bracketed statement reads:

[when notice of default states entity recorded it "'as agent for beneficiary,'" the debtor to state a claim must allege facts showing the entity was not the beneficiary's agent]

6. On page 18, the last sentence in footnote 11, beginning with "Accordingly, the Rossbergs forfeited," delete the word "Accordingly" at the beginning of the sentence and replace it with the word "Consequently," so the sentence reads:

Consequently, the Rossbergs forfeited any claim based on BAC signing the declaration.

7. On page 19, the first sentence at the top of the page, beginning with "This cause of action," delete the words "seeks to state" and replace them with the word "alleges" so the sentence reads:

This cause of action alleges a fraud claim based on Defendants' promises to modify the Rossbergs' loans.

8. On page 21, following the third sentence of the first full paragraph at the top of the page, beginning with "Moreover, the Rossbergs fail to explain," insert the citation "(See *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 795.)"

9. On page 21, the first sentence in footnote 12, beginning with "In their brief," insert the words "they based" between the words "contend" and "their" and delete the words "was based" so the sentence reads:

In their brief, the Rossbergs also contend they based their fraud cause of action on the fraudulent nonjudicial foreclosure documents and their false notarizations.

3

10. On page 21, the last sentence in footnote 12 beginning at the bottom of the page and continuing on the bottom of page 22, beginning with "Moreover, as explained above," delete the words "in any material way" at the end of the sentence so the sentence reads:

> Moreover, as explained above, the Rossbergs failed to adequately allege the nonjudicial foreclosure documents were forged or otherwise false.

Pursuant to California Rules of Court, rule 8.1105(c), and for good cause shown, Defendant and respondent Bank of America, N.A.'s request to publish the opinion is GRANTED. The opinion is ordered published in the Official Reports. (Cal. Rules of Court, rule 8.1105(b).)

These modifications do not change the judgment.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.

4