Filed 7/30/14  Choi v. JPMorgan Chase Bank CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DONG CHOI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>    Defendants and Respondents. | G048327<br><br>(Super. Ct. No. 30-2012-00585606)<br><br>O P I N I O N |

Appeal from judgments of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Dong Choi, in pro per., for Plaintiff and Appellant.

AlvaradoSmith, Theodore E. Bacon, and Mikel A. Glavinovich for Defendant and Respondent JPMorgan Chase Bank, N.A.

Ruzicka & Wallace, Frank J. Coughlin and Richard Sontag for Defendants and Respondents, Earl Wallace, Richard Sontag, Dess Richardson and Kevin Mello.

Dong Choi appeals from the trial court's judgments dismissing his first amended complaint after sustaining without leave to amend the demurrers filed by defendants JPMorgan Chase Bank, N.A. (JPMorgan), and a law firm, Ruzicka & Wallace, LLP, and several of the firm's attorneys, including Earl Wallace, Richard Sontag, Dess Richardson, and Kevin Mello (collectively, the Attorney Defendants). Choi argues his complaint properly stated a claim for wrongful foreclosure to cancel a trustee's deed that issued after a nonjudical foreclosure sale when Young Yoon, Choi's predecessor in interest, defaulted on a home loan. Yoon gave Choi a quitclaim deed to the property several years after the foreclosure, and Choi filed suit to undo the foreclosure. Choi also contends the litigation privilege embodied in Civil Code section 47(b) does not shield the Attorney Defendants' conduct. As we explain, these contentions are without merit and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Yoon bought her home at 5451 Cajon Avenue in Buena Park (the property) in 2001, and refinanced the property in 2007, borrowing $348,000 from Washington Mutual Bank (WaMu) on April 19, 2007, secured by a note in which she promised to repay the loan (Note) and a deed of trust. Yoon failed to make her loan payments the first year and by May 9, 2008, WaMu through an agent, Quality Loan Service Corp. (Quality), initiated foreclosure proceedings on the property, which included a Notice of Default and Election to Sell Under Deed of Trust filed with the Orange County recorder's office. Yoon did not cure her default and by August 2008, her unpaid loan obligation had increased with capitalized interest and late charges to $371,000. The trustee filed a notice the property would be sold under the Deed of Trust's power of sale provision, and at the trustee's nonjudicial sale on September 3, 2008, WaMu purchased the property. WaMu recorded a Trustee's Deed Upon Sale on September 9, 2008. By the end of the month, on September 25, 2008, the Office of the Thrift Supervision closed WaMu and named the

2

Federal Deposit Insurance Corporation (FDIC) as receiver. JPMorgan acquired WaMu's assets the same day under a purchase and asssumption agreement it entered with the FDIC.

In November 2008, WaMu's former law firm, Pite Duncan LLP, filed on behalf of WaMu and any successors in interest, including JPMorgan, an unlawful detainer action (the First Unlawful Detainer Action) against Yoon and any unnamed persons occupying the property. In January 2009, Yoon filed bankruptcy (the First Bankruptcy Case), which the bankruptcy court dismissed in March 4, 2009. On March 10, 2009, Yoon responded by filing in superior court a lawsuit (the First Lawsuit) for "wrongful foreclosure" against WaMu and Quality.

The next week, on March 16, 2009, Yoon filed for bankrupt tcy again (the Second Bankruptcy Case). In late April 2009, Yoon also filed in the federal district court a lawsuit (the Second Lawsuit) for wrongful foreclosure against WaMu and JPMorgan. The federal district court dismissed the Second Lawsuit with prejudice in July 2009. The bankruptcy court also dismissed the Second Bankruptcy Case that month.

In August 2009, Yoon filed in superior court another lawsuit (the Third Lawsuit) against WaMu, JP Morgan, and the FDIC for wrongful foreclosure that was ultimately dismissed. On August 17, 2009, in the First Unlawful Detainer Action, the court entered judgment after trial in favor of WaMu, its successors and assigns and against Yoon and all unnamed occupants for possession of the property.

Two weeks later in early September 2009, Yoon sought bankruptcy protection again (the Third Bankruptcy Case), but the bankruptcy court dismissed the case. In late September 2009, the superior court dismissed the First Lawsuit (wrongful foreclosure) without prejudice. In January 2010, the bankruptcy court dismissed the Third Bankruptcy Case.

According to defendants, on August 16, 2010, Yoon purported to substitute herself as the lender and beneficiary under the Deed of Trust in place of WaMu by recording false Uniform Commercial Code financing statements. That same day,

3

according to defendants, Choi recorded as a purported "authorized representative" of WaMu a false Rescission of Trustee's Deed.

In September 2010 and again in September 2011, the Attorney Defendants filed and dismissed unlawful detainer actions on behalf of WaMu and JPMorgan, respectively, apparently learning in those actions of the favorable outcome in the First Unlawful Detainer Action when Choi asserted "'Res Juticata [*sic*].'"

In May 2011, a receiver's deed formally transferred title of the property to JPMorgan.

In October 2011, Yoon executed a quitclaim deed transferring any title she still held in the property to Choi. The quitclaim deed did not purport to add Choi to the Note securing the property, or otherwise make him a party to the loan agreement embodied in that Note.

In early May 2012, in the First Unlawful Detainer Action, the court entered on JPMorgan's motion an order nunc pro tunc substituting JPMorgan as the plaintiff, and JPMorgan obtained a writ of possession for the property. Choi, however, filed for bankruptcy (the Fourth Bankruptcy Case), but in July 2012 the bankruptcy court granted JPMorgan relief from the automatic stay and directed as *in rem* relief that no further bankruptcy filings would forestall eviction.

Later in July 2012, Yoon and Choi filed this lawsuit against JPMorgan and the Attorney Defendants for (1) wrongful foreclosure, (2) slander of title, (3) unfair business practices, (4) cancellation of instruments, (5) wrongful eviction, (6) fraud, (7) negligence, and (8) declaratory relief. After the trial court sustained a series of demurrers, Choi (but not Yoon) filed a first amended complaint (FAC) paring his claims to four causes of action: (1) Statutory Violations, citing Code of Civil Procedure sections 2923.5(a), 2923(b), 2934a(d) and 2924 et. seq., (2) Slander of Title, (3) Unfair Business Practices, and (4) Fraud. Choi asserted against the Attorney Defendants only the latter two causes of action.

Specifically, Choi's first cause of action alleged JPMorgan (or more accurately, its predecessors in interest) and Quality (the trustee that initiated foreclosure)

4

failed to comply strictly with statutes governing the foreclosure process. In particular, Choi asserted Quality lacked authority and did not assume its trustee position properly because WaMu, in substituting Quality as the trustee some time after the refinancing closed, had already sold its interest in the mortgage to an entity known as WaMu Asset Acceptance Corporation, which in turn packaged, securitized, and sold the asset to others. In other words, WaMu had no authority to substitute Quality as the trustee, and therefore the foreclosure proceedings were fatally flawed. Choi also alleged the foreclosure was void because the notice of default and notice of trustee's sale concerning the property identified WaMu instead of its successor or successors in interest as the Deed of Trust's beneficiary.

Choi asserted his first cause of action for statutory violations only against JPMorgan and Quality, and similarly asserted his second cause of action for slander of title only against those defendants and not the Attorney Defendants. Choi's second cause of action alleged that the notice of default, notice of trustee's sale, the Trustee's Deed Upon Sale, and the recording of these documents constituted slander of title because Quality "and Does 1 through 25" acted "purportedly but falsely" as the trustee or agent of the trust deed beneficiary. Choi alleged that "[n]one of the Defendants, whether jointly or severally, w[as] a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property," and therefore by "wrongfully caus[ing] the recording of the Notice of Default, Substitution of Trustee, Notices of Trustee's Sales and Trustee's Deed Upon Sale," they committed slander of title.

Choi's third cause of action alleged all the defendants committed unfair business practices in violation of Business and Professions Code section 17200. Choi asserted "Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters . . . ." Specifically, Choi asserted defendants' wrongful business activities included, among many other examples, "Instituting improper or premature foreclosure proceedings to generate unwarranted fees," "Executing and recording false and misleading documents," "Executing and recording documents without

5

legal authority to do so," "Failing to disclose the principal for which documents were being executed and recorded in violation of California Civil Code Section 1095," and "Acting as beneficiaries and trustees without the legal authority to do so."

Choi alleged that these "acts and practices have caused substantial harm to California consumers," and as a specific example, Choi asserted "as [a] direct and proximate result of the aforementioned acts, Defendants have prospered and benefited from Plaintiff, Yoon by collecting mortgage payments and fees for foreclosure related services, and have been unjustly enriched from their act of foreclosing on Plaintiff's home when they had agreed . . . to do so in compliance with applicable laws." Choi relied on Yoon's alleged injury though the trial court had dismissed her as a plaintiff because Choi, who is not an attorney, was not authorized to represent her and file the FAC on her behalf. (An attorney appeared briefly for Yoon earlier in the proceedings, but not after the trial court sustained the defendants' demurrers to the initial complaint.) The trial court observed after having dismissed Yoon that "I don't think you [Choi] are the appropriate plaintiff in the case for these points that you are making, and . . . the appropriate plaintiff has not — has been misjoined [by Choi's inability to represent her] and dismissed from the case." The trial court questioned whether any "facts have been asserted that would make the plaintiff Mr. Choi a consumer of [defendants'] services" for purposes of his unfair business practices claim.

Choi's fourth and final cause of action alleged fraud against all the defendants. Choi alleged JPMorgan was the "real party in interest for the subject Note [for the] subject Property up until June 2012" and that the designation of other entities as the beneficiary or the substitute trustee in the Notice of Default, Substitution of Trustee, Notice of Trustee's Sale, Trustee's Deed, the Receiver's Deed, and the three unlawful detainer actions constituted fraud. According to Choi, "As a proximate result of Defendant JPMorgan and Does 1 through 25['s] fraudulent misrepresentations, Plaintiff lost property on Sep[tember] 3rd 2008 [the Trustee's Sale], . . . received" eviction notices in 2009 and 2012, and "suffered great financial damages and emotional distress." Choi alleged the Attorney Defendants committed fraud when they filed the unlawful detainer

6

actions because: (1) "they knew that they are [*sic*: were?] not representing WAMU/JPMorgan" but nevertheless filed the second unlawful detainer action; (2) they wrongfully filed the third unlawful detainer action on JPMorgan's behalf based on an assertedly void Receiver's Deed; and (3) they wrongfully filed a fraudulent motion in the first unlawful detainer action to have JPMorgan replace WaMu as the plaintiff.

Choi sought in the FAC's prayer for relief an order cancelling the Trustee's Deed, an order cancelling the Receiver's Deed, an order setting aside the unlawful detainer judgment, restitution, and compensatory and punitive damages.

On January 10, 2013, the trial court sustained without leave to amend the Attorney Defendants' demurrers to Choi's FAC. On January 23, 2013, the trial court similarly sustained without leave to amend JPMorgan's demurrer. The trial court entered judgment against Choi, and he now appeals.[1]

## II

## DISCUSSION

"When the trial court sustains a demurrer, we review the complaint de novo to determine whether it alleges facts stating a cause of action on any possible legal theory." (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490 (*Rossberg*).) "The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.]" (*Martin v. Bridgeport Community Assn., Inc*. (2009) 173 Cal.App.4th 1024, 1031.) The plaintiff also bears the burden "to establish that the complaint could be amended to cure any pleading defect." (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1008.) "To meet this burden, a plaintiff must . . . on appeal[]

---

[1] We deny as irrelevant the Attorney Defendants' request for judicial notice of events subsequent to the trial court's ruling, including a lockout by the Orange County Sheriff's Department placing JPMorgan in possession of the property in September 2013.

7

enumerate the facts and demonstrate how those facts establish a cause of action." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.)

Choi makes no mention by a separate heading nor does he otherwise challenge in his appellate briefing the trial court's ruling sustaining defendants' demurrers to his slander of title and fraud causes of action. (See *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 [lack of analysis or heading forfeits argument]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] waived"].) In light of Choi's forfeiture, we must presume the trial court's ruling on these points was correct because the fundamental appellate requirement that "error must be affirmatively shown" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) applies even where our review is de novo. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [review limited to issues raised and adequately supported in appellant's brief]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [same].) We therefore do not address the slander of title and fraud causes of action eliminated from Choi's FAC by the sustained demurrers.

Choi also fails to address any of the specific statutory provisions he cited in his FAC as the basis for his first cause of action alleging "Statutory Violations." (Code Civ. Proc., §§ 2923.5, subds. (a), (b); 2934a, subd. (d); 2924.) Instead, relying on Civil Code section 3412, he argues that "alleging void instruments states a cause of action." Specifically, he argues the Trustee's Deed Upon Sale and "other foreclosure documents" should be canceled under section 3412, which provides that "[a] written instrument" may be "ordered to be delivered up or canceled" when "there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable . . . ." As the trial court explained below, however, cancellation "is not a cause of action" but rather a remedy available to plaintiffs prevailing at trial "if that remedy is appropriate."

The gravamen of Choi's appeal does not rest in any particular statutory provision or in any of the four causes of action he enumerated in his FAC (i.e., "Statutory

8

Violations," slander of title, unfair business practices, fraud), but rather in his general claim of "wrongful foreclosure." Choi relies on *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7-8 (*Munger*), as the basis for wrongful foreclosure as a cause of action, citing its holding that while conversion is a tort that applies only to personal property, not real property, nevertheless "a trustee or mortgagee may be liable to the **trustor or mortgagor** for damages sustained when there *has been an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust*." (Choi's italics, boldface added.)

Choi contends the trustee's sale was illegal because the substitution of trustee form and notice of sale initiating the foreclosure proceedings identified WaMu as the beneficiary entitled to enforce the terms of the Deed of Trust, but according to Choi's FAC, WaMu sold its security interest in the Note to another party (WAMU Asset Acceptance Corp.) almost immediately after Yoon's refinancing. According to Choi, that party in turn packaged, pooled, and securitized the loan in a process that led to the national financial crisis. In essence, Choi argues the foreclosure against Yoon's property was void because the wrong party initiated it. WaMu, having sold its interest in the property immediately upon the refinancing, could not appoint the substitute trustee (Quality) that commenced the foreclosure proceedings.

As Choi insightfully recognizes, foreclosure under the power of sale provision in a deed of trust is essentially a private action enforcing the terms of the parties' agreement. We summarized in *Rossberg* the core mechanics of foreclosure, in which "'a valid deed of trust include[s] a power of sale clause, which empowers the beneficiary-creditor to [foreclose] on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note. [Citations.]' [Citation.]" (*Rossberg*, *supra*, 219 Cal.App.4th at p. 1491.)

But here, Choi was not a party to the underlying promissory note or deed of trust, nor does he suggest he was a third party beneficiary entitled to insist on strict compliance with the power of sale provision. A third party beneficiary "may enforce a contract made expressly for his or her benefit" (*Sessions Payroll Management, Inc. v.*

9

*Noble Construction Co.* (2000) 84 Cal.App.4th 671, 680), but Choi did not allege Yoon and WaMu entered their loan refinancing agreement for Choi's express benefit. A party not named in the contract may also qualify as a third party beneficiary where the agreement reflects that intent (*ibid.*), but Choi points to nothing in the refinancing procedure that discloses such an intent.

And as the trial court explained, the quitclaim deed Yoon gave Choi *after* the foreclosure sale did not authorize him to reopen the foreclosure. The trial court observed that "the mere recording of a quitclaim deed would be insufficient to give Mr. Choi anything else other than [Yoon's remaining legal] title to the property," if any. In other words, whether or not Yoon still held any valid legal title to convey to Choi after the foreclosure sale, her quitclaim deed to Choi did not make Choi a "trustor or mortgagor" under *Munger*. He did not somehow retroactively entrust or mortgage an interest in the property; to the contrary, he never alleged he assumed the mortgage or undertook any obligation to pay the Note. Thus, he had no grounds to oppose the foreclosure. Accordingly, the trial court concluded, "I don't think you are the appropriate plaintiff in the case for these points that you are making . . . ." The trial court did not err.

Moreover, even assuming Choi was a proper party to challenge the foreclosure, we observe that his allegations in the complaint belie his claim that WaMu initiated the foreclosure improperly because it no longer held any interest in the property. Choi's complaint acknowledges that the pooling and servicing agreement under which Yoon's refinance loan was packaged and securitized retained WaMu as "the servicer for the Trust." Nothing in Choi's allegations in the FAC suggest that WaMu in servicing the trust on behalf of the loan's new owner (or new securitized owners) could not act as the owner's agent and properly substitute Quality as the new trustee who eventually initiated the foreclosure proceedings.

On appeal, Choi contends the Deed of Trust "require[d] the Lender, and not its agents, to substitute a new trustee." Choi argues that because the Deed of Trust provides the "Lender" may replace the existing trustee authorized to initiate foreclosure, "'Lender' must denote the [initial] lender or its successors *without* encompassing [the]

10

lender's agents, nominees, or other representatives." (Choi's italics.) Choi rests his interpretation on the designation of WaMu in the Deed of Trust as the Lender and the use of "the singular 'is' throughout (as plural may connote agents)."

We are not persuaded. Choi asserts his interpretation of the Deed of Trust "must be accepted as correct in testing the sufficiency of the complaint," but we interpret the provisions of a written contract de novo. (*People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1395.) Nothing in the Deed of Trust precluded the use of an agent by the lender or its successors in interest. Indeed, as a corporate entity, WaMu could *only* act through agents. Choi's contrary position is without merit.

Choi's unfair business practices claim also fails. As best we can discern, it is based on his wrongful foreclosure claim, and therefore falls with that claim. Choi argues generally that "[t]he 'unfair' prong of section 17200 intentionally provides courts with broad discretion to prohibit new schemes to defraud. [Citation.] An unlawful business practice or act is 'unfair' when it 'offends established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Choi argues vaguely that his "FAC is replete with wrongdoing allegations against all defendants," and in his reply brief, he rebuts the Attorney Defendants' invocation of the litigation privilege because "they are being sued for their *conduct*" and for their "collusion," not for their words. (Choi's italics.)

But Civil Code section 47(b)'s litigation privilege applies by its terms to attorney conduct that includes filing lawsuits and advising clients. Choi does not allege the Attorney Defendants engaged in any conduct besides filing the Second and Third Unlawful Detainer actions or similar legal maneuvers. The litigation privilege expressly embraces such conduct. Similarly, there is nothing fundamentally unfair about limiting what amounts to a breach of contract claim in Choi's trustee substitution challenge to the parties that signed the contract, their successors, or intended third party beneficiaries. Choi does not qualify under any of these categories for his foreclosure challenge, and therefore the trial court properly sustained the demurrers.

11

### III

### DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.