Filed 4/24/26  Gilmore v. Wilshire Quinn Capital CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| KEVIN E. GILMORE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WILSHIRE QUINN CAPITAL, INC.,<br><br>    Defendant and Respondent. | A171376<br><br><br>(Alameda County<br>Super. Ct. No. 23CV056995) |

Plaintiff Kevin E. Gilmore, appearing in propria persona, appeals from an order sustaining defendant Wilshire Quinn Capital, Inc.'s (Wilshire) demurrer to plaintiff's first amended complaint without leave to amend.[1] Gilmore sued Wilshire alleging breach of contract, fraud, and rescission, among other claims, regarding a loan agreement entered into between the parties secured by a deed of trust on two real properties in Berkeley,

---

[1] The general rule is that an order sustaining a demurrer without leave to amend is not appealable, but a party may appeal from the entry of dismissal after such order.  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.)  Here, no judgment of dismissal is in the record.  However, " 'when the trial court has sustained a demurrer [without leave to amend] to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' [Citation.]"  (*Ibid.*)  This is the case here.  We deem the order on the demurrer to incorporate a judgment of dismissal and will review the order.  (*Ibid.*)

California.  We affirm the trial court's order as to all claims except the rescission cause of action.  As to the rescission cause of action, we find Gilmore is permitted leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Complaint*

On December 26, 2023, plaintiff filed a complaint against Wilshire alleging causes of action for breach of contract, fraud and misrepresentation, rescission, and breach of the covenant of good faith and fair dealing.  The complaint alleged Gilmore entered into a mortgage agreement with Wilshire in 2019, secured by a deed of trust on two properties, on Virginia Street and Fifth Street, in Berkeley.  The parties entered into a loan modification agreement in 2021.  Wilshire allegedly assured Gilmore that it did not want to foreclose on the properties.  In June 2022, Wilshire notified Gilmore that the mortgage agreement was in default, demanded payment in full, and refused Gilmore's requests to rescind the mortgage agreement.  Gilmore suffered damages caused by the foreclosure of both properties.  The trial court sustained Wilshire's demurrer to each cause of action with leave to amend.  The trial court's order stated, in part, that it was unclear what agreement Gilmore alleged was breached and it did not appear that the contract was attached to the complaint or its terms were recited, as required to state a cause of action.  Gilmore filed a first amended complaint.

### II. *First Amended Complaint*

The first amended complaint asserts the same four causes of action as well as a fifth cause of action for injunctive relief, and attaches additional exhibits.  We summarize the facts based on the operative complaint and the attached documents.

2

## A.     General Allegations

On March 13, 2019, Wilshire presented Gilmore with an appraisal for Gilmore's property on Virginia Street in Berkeley in the amount of $1.8 million. On March 22, 2019, Gilmore entered into a mortgage agreement with Wilshire in the amount of $1.4 million.[2] Matthew Mielke, of Wilshire, promised Gilmore that the mortgage was easily cancelable and assured him that he would not lose the Virgina Street property. This was a false statement made to induce plaintiff to enter into the mortgage agreement. Gilmore relied on this false statement when he entered into the mortgage agreement.

In November 2019, the City of Berkeley canceled a restrictive covenant on Gilmore's Fifth Street property. Mielke requested a lien on the Fifth Street property "in connection with the Mortgage Agreement." The Fifth Street property had an appraised value of $1.5 million. Mielke promised that the mortgage agreement was "easily cancellable" and assured Gilmore he would not lose the property. This statement was false and made with the intent to induce Gilmore to add the Fifth Street property to the mortgage agreement. Gilmore relied on the false statement and added the Fifth Street property as collateral for the mortgage agreement. As a result of his reliance, Gilmore was damaged. On December 10, 2019, Gilmore executed a deed of trust with Wilshire for the Fifth Street property. The attached deed of trust and security agreement lists the note amount as $1.35 million, which is secured by both the Virginia Street property and the Fifth Street property.

On January 27, 2021, the parties entered into a modification of deed of trust, under which Wilshire loaned Gilmore an additional $195,000 and

---

[2] The mortgage agreement is not attached to the complaint; nor are its terms quoted verbatim in the complaint.

extended the loan maturity date. The new principal balance increased to $1.545 million, and the loan maturity date was extended to October 1, 2021.

On September 20, 2021, Wilshire offered Gilmore a second loan modification deal to include both the Virginia Street and the Fifth Street properties "with no cash out to Plaintiff . . . ." The values of the properties exceeded $3.5 million. Mielke and Wilshire assured plaintiff that Wilshire did not want to foreclose on the properties and would work with plaintiff to arrange for another lender to "take out the Mortgage Agreement" and release the properties back to plaintiff. Wilshire loaned Gilmore an additional $210,000, which increased the principal balance to $1.755 million. The maturity date of the loan modification was October 1, 2022.

On June 12, 2022, Wilshire notified Gilmore that the mortgage agreement was in default, "even though there was more than adequate equity to pay the amount borrowed from Wilshire." On June 16, 2022, Wilshire notified Gilmore it was placing insurance on the properties. However, Gilmore already had insurance on the properties. Wilshire sent Gilmore correspondence " 'demanding payoff of our loan . . . .' " On July 20, 2022, Wilshire filed a declaration of default and demand for sale of the properties. The attached exhibits include the trustee's July 20, 2022, declaration of default and demand for sale notifying Gilmore that he was in default for nonpayment of installment payments of $247,451.19 due on May 1 2022.

On July 27, 2022, plaintiff located alternative financing to pay off the mortgage agreement with Wilshire, but Wilshire refused to allow the new lender to pay off the loan. Wilshire refused to state that the loan was current and demanded payment in full. Chris Garcia, Wilshire's chief executive officer, sent plaintiff an email stating: " 'At this time we are requesting the full amount for the loan. As we already told you, we will not be accepting

4

partial payment. If your new lender shows us in writing that they are seriously considering paying us off, we will consider dropping the exit fee.' "

Gilmore then realized Wilshire had defrauded him and its true intent was to foreclose on the properties, despite the facts that plaintiff only owed $1.8 million and the properties were worth $4 million. In September 2022 and October 2022, Gilmore orally requested to rescind the loan agreement, and in March 2023, he requested rescission in writing. Wilshire refused to rescind the mortgage agreement. The first amended complaint attaches a notice of default and election to sell under deed of trust, recorded on August 5, 2022; a notice of trustee's sale recorded on December 5, 2022, stating the properties will be sold at public auction; and a trustee deed upon sale stating that the properties were sold on March 8, 2023.

The foreclosure of the properties caused Gilmore to lose monthly rental income; over $600,000 in equity; disruption of his family's living arrangements; emotional distress; and pain and suffering.

B.    Causes of Action

Gilmore's breach of contract cause of action alleges defendant breached the mortgage contract by (1) demanding payment of the loan in June 2022, when the new loan maturity date was October 1, 2022; (2) by initiating foreclosure proceedings prior to the loan maturity date; (3) by adding a $150,000 exit fee on June 21, 2022, when the loan contract did not contain an exit fee; and (4) by force-placing insurance on the properties when the loan contract provided for plaintiff to carry his own insurance. Gilmore further contends that Wilshire breached the September 17, 2021, second modification of deed of trust by failing to advance $210,000 to him and instead applying the funds to some of the mortgage payments and that he was harmed by losing access to the funds.

5

Gilmore's fraud cause of action alleges that in August and September 2021, Chris Garcia of Wilshire orally told Gilmore that "there was $0 equity available for cash out on Plaintiff's properties." Wilshire told Gilmore that based on its appraisals it could not offer more than the $1.4 million already paid out on the loan. Wilshire knew its statement about the property values was false. Gilmore did not know the statement was false, and he relied on the appraisal values. Gilmore was harmed because he did not receive "cash out" on the Fifth Street property. Gilmore later learned that "Zillow estimated each house to be worth $1,800,000 each [*sic*] in September of 2021." Mielke of Wilshire also promised plaintiff that the mortgage was easy to cancel and that Gilmore would not lose the properties. This statement was false and "was made with the intent to induce Plaintiff to enter into the Mortgage Agreement and modification with Wilshire." Gilmore relied on the false statement and entered into the mortgage agreement.

On September 17, 2021, Wilshire fraudulently stated that the new loan maturity date in the second modification deed of trust would be October 1, 2022. Wilshire knew the representation was false because Garcia began foreclosure proceedings before October 1, 2022. Gilmore relied upon the false representation and was damaged when Wilshire began foreclosure proceedings, which prevented him from refinancing or selling the properties.

The final instance of alleged fraud is based on Mielke's response to Gilmore's October 7, 2019, oral request that Wilshire report his loan to three credit reporting bureaus. Mielke told Gilmore he had to direct his request to the loan servicer. The loan servicer then told Gilmore that Wilshire's statement was false and that the loan could only be reported to credit bureaus if Wilshire provided a form to Gilmore. Gilmore relied on Wilshire's

6

false statement and was harmed because his payments were not reported and his credit score did not improve.

Gilmore's third cause of action is for rescission of the loan agreements. He alleges Wilshire violated the Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq.) by not allowing plaintiff to cancel the September 20, 2021, loan modification and by failing to provide him with the TILA disclosure regarding the right to rescission.

Gilmore's cause of action for breach of the covenant of good faith and fair dealing asserts he entered into contracts with Wilshire on December 6, 2019, and September 17, 2021, and that Wilshire interfered with plaintiff's ability to receive rights under the September 17, 2021 contract and failed to advance $210,000 to plaintiff as agreed upon in the contract. Wilshire also prevented plaintiff from selling the Fifth Street property in December 2022 to pay off the loan. Plaintiff performed all covenants, conditions, and promises required except for those he was prevented or excused from performing.[3]

---

[3] The first amended complaint also includes a fifth cause of action, for injunctive relief. However, plaintiff's opening brief does not mention this cause of action or include any argument as to why the trial court's ruling sustaining the demurrer to the injunctive relief cause of action was improper. Accordingly, we do not address the fifth cause of action. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on [the] appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [appellant's brief must contain a legal argument with citation of authorities on the points made; if none is furnished, the court may pass on the contention without further consideration].)

### III.  *Demurrer to First Amended Complaint*

The record does not contain Wilshire's demurrer, memorandum of points and authorities in support of its demurrer, or reply papers. It is unclear whether the parties presented any oral argument at a hearing on the demurrer. There is no reporter's transcript in the appellate record, and the order does not state that the parties appeared and presented argument. Our review is impeded by the inadequate record. (*Jameson v. Desta, supra*, 5 Cal.5th at p. 609 [appellant has burden of providing an adequate record for review].) The record contains Gilmore's opposition to the demurrer, in which he argued inapplicable case law regarding demurrers to answers. He also made limited, conclusory arguments contending that each cause of action was sufficiently pleaded; however, he failed to identify the elements of each cause of action or support his arguments with legal authority. Nor did Gilmore explain how he could further amend the complaint to cure any pleading deficiencies. Instead, he simply stated that if the demurrer were sustained, he should be granted leave to amend.

Although our review is impeded by the inadequate record, the trial court's order, which summarizes some of Wilshire's arguments and Gilmore's responses, or lack thereof, assists us in understanding the issues raised. The trial court's order states Wilshire argued that the first amended complaint failed to state facts sufficient to constitute a cause of action and that each cause of action pleaded is uncertain, ambiguous, and unintelligible. The order sustains Wilshire's demurrer to each cause of action on the grounds the first amended complaint failed to allege facts sufficient to state a claim. It further concludes that based on plaintiff's failure to cure the prior pleading deficiencies and the lack of a meaningful opposition, further leave to amend would be futile.

## DISCUSSION

### I. *Standard of Review and Gilmore's Burden*

On appeal from an order of dismissal after an order sustaining a demurrer, we exercise our independent judgment about whether the complaint states a cause of action. (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) In making this determination, we assume the truth of "(1) all facts properly pleaded by the plaintiff, (2) all facts contained in exhibits to the complaint, (3) all facts that are properly the subject of judicial notice, and (4) all facts that reasonably may be inferred from the foregoing facts." (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.)

" '[T]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.] We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings. [Citation.]' [Citations.]" (*Rossberg v. Bank of America, N. A.* (2013) 219 Cal.App.4th 1481, 1490–1491 (*Rossberg*).)

We review the decision to deny leave to amend for abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In applying this standard, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*) The "burden of proving such reasonable possibility is squarely on the

9

plaintiff." (*Ibid.*) " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]' [Citation.]" (*Rossberg, supra*, 219 Cal.App.4th at p. 1491.)

## II. *Wilshire's Demurrer Was Properly Sustained*

As noted, the record is incomplete in that it does not contain Wilshire's moving or reply papers. However, the trial court's detailed order provides further background as to the arguments asserted by Wilshire sufficient for us to review the ruling. As we explain, Gilmore fails to state facts sufficient to establish the elements of each cause of action pleaded in the first amended complaint.

### A. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

As to the breach of contract cause of action, the trial court's order states: "The FAC [first amended complaint] alleges that the parties entered into a mortgage contract as to the Subject Properties in September 2021. [Citation.] Plaintiff alleges Defendant breached the contract by (1) demanding payment of the mortgage note before the loan maturity date of October 1, 2022; (2) adding an exit fee; (3) 'force placing insurance;' and (4) failing to advance $210,000 to Plaintiff and instead applying the funds to mortgage payments. Plaintiff refers to Exhibit 5 [second modification of deed

10

of trust] as the contract at issue.  However, Plaintiff does not indicate which terms within Exhibit 5 were breached.  As correctly noted by Defendant, sections 1.1.1 and 1.1.2 provide that the agreement incorporates other agreements that are not referenced, attached, or stated verbatim in the FAC. [¶] Plaintiff provides no clarification in his Opposition; he only argues that he has sufficiently stated a cause of action for breach of contract.  Plaintiff fails to identify which contract terms were allegedly breached by Defendant."

Neither in his opposition filed in the trial court nor in his appellate opening brief does Gilmore identify the elements of a cause of action for breach of contract.  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) If the complaint alleges breach of a written contract, "the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference."  (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.)  As the trial court correctly found, Gilmore's breach of contract cause of action refers to attached exhibit 5, which is the second modification of deed of trust recorded September 20, 2021.  However, Gilmore did not identify which terms of the attached document were breached.  Further, the second modification of deed of trust refers to other loan documents that are not attached to the first amended complaint or stated verbatim.  As the trial court stated, Gilmore's opposition to the demurrer provided no clarification as to the terms of the contract that were breached.  The opposition refers to the addition of a $150,000 exit fee, which allegedly breached the contract, and states that Wilshire changed the loan maturity date.  It does not cite to any terms of the

11

contract that were breached. The trial court correctly concluded that Gilmore's pleading failed to state a claim for breach of contract.

On appeal, Gilmore does not argue that he sufficiently pleaded facts sufficient to allege breach of contract based on Wilshire's alleged (1) payment demand before the loan maturity date of October 1, 2022; (2) initiation of foreclosure proceedings prior to the loan maturity date; (3) the addition of a $150,000 exit fee; or (4) the forced placement of insurance. Thus, he has conceded he has failed to state a claim as to these alleged breaches. (*Rossberg, supra*, 219 Cal.App.4th at p. 1504.) He argues only that his first amended complaint adequately alleged that Wilshire breached the second loan modification by failing to pay him the $210,000. Notably, he did not make this argument to the trial court. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192 [arguments not raised below in opposition to demurrer are forfeited].) Even if we were to overlook the forfeiture, we would conclude Gilmore has not shown error because the facts alleged do not state a breach of contract claim relating to the second loan modification. Gilmore alleges in both his original complaint and his first amended complaint that Wilshire offered him a loan modification in September 2021, "with no cash out to [him] . . . ." The first amended complaint further alleges that Wilshire "applied the funds [$210,000] to some of the mortgage payments." Thus, Gilmore alleges he received the benefit of the additional loan amount by having it applied to mortgage payments he owed. Gilmore failed to allege facts sufficient to state a claim for breach of contract. (*People ex. rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957 [" ' "[A] plaintiff may not . . . avoid [factual assertions of a prior complaint] by contradictory averments, in a superseding, amended pleading" ' " (2d bracketed insertion added)].)

12

Gilmore argues that Wilshire's alleged failure to pay him the $210,000 breached the implied covenant of good faith and fair dealing. He does not argue that any other conduct by Wilshire constitutes a breach of the implied covenant. This claim fails for the same reasons Gilmore's breach of contract cause of action fails to state a claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352–353 [claim for breach of the covenant that realleges same allegations as companion claim for breach of contract is properly dismissed as superfluous].)

## B. Fraud

The first amended complaint alleges fraud and misrepresentation based on Wilshire's alleged false statements about the property values, the ability to cancel the mortgage, and the maturity date of the loan. It also alleged Wilshire falsely told Gilmore that he had to report his loan to the loan servicer in order for the loan to be reported to credit reporting bureaus. The trial court found that Gilmore failed to allege one or more elements of fraud as to each of the alleged instances of fraud or misrepresentation.

The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Fraud must be pleaded with specificity, which means the plaintiff must allege how, when, where, to whom, and by what means the representations were made. (*Id.* at p. 645.) In actions against a corporate defendant, the plaintiff must allege the names of the persons who made the representations,

13

their authority to speak on behalf of the corporation, to whom they spoke, what they said, and when it was said. (*Ibid.*)

Notably, although the first amended complaint asserts Wilshire's alleged failure to advance $210,000 to Gilmore was a breach of the second modification deed of trust, it does not allege this conduct as one of the bases for Gilmore's fraud cause of action. On appeal, Gilmore does not address the sufficiency of the fraud allegations pleaded in the first amended complaint or how the trial court's analysis of their inadequacy was incorrect. Thus, he fails to meet his burden to show that he alleged facts sufficient to state a cause of action. (*Rossberg, supra*, 219 Cal.App.4th at p. 1504.) He argues for the first time on appeal that Wilshire committed fraud by "swindling him out of the $210,000 promised in the loan contract" and that Wilshire misrepresented that it would give Gilmore $210,000. Even if we were to consider Gilmore's assertions in his appellate brief to be an effort to demonstrate the possibility of amending the first amended complaint to state a claim for fraud, his assertions would still be conclusory, lack the required specificity, and be inconsistent with his allegations that Wilshire offered him a loan modification in September 2021 "with no cash out to [him]," and that Wilshire "applied the funds [$210,000] to some of the mortgage payments." The trial court did not err in sustaining Wilshire's demurrer to the fraud cause of action.

## C.    Rescission

Gilmore's cause of action for rescission alleges he was entitled to rescind the second loan modification because Wilshire violated the TILA by failing to provide him with disclosure documents regarding the right to rescind. Under the TILA, a lender is required to disclose a borrower's right to rescind in a consumer credit transaction in which a security interest is

14

acquired "in any property which is used as a principal dwelling of the person to whom credit is extended . . . ." (15 U.S.C. § 1635(a); 12 C.F.R. § 1026.23 (2017).) The trial court found Gilmore failed to allege that the second loan modification was secured by his principal dwelling. Instead, the first amended complaint alleged damages including loss of rental income, indicating that the loan was secured by rental property. The trial court's order noted that Gilmore's opposition to the demurrer provided no facts to show that the TILA applied to the loan. Regarding his rescission claim, Gilmore's opposition brief stated only that: "Plaintiff states a cause of action under the Truth in Lending Act (TILA). Plaintiff had the ability to fund a rescission by selling [the Virginia Street property]."

On appeal, Gilmore argues that Wilshire's failure to provide the required disclosures extended his time to request rescission of the loan to three years from the date of the loan. However, in the argument section of his brief he does not state that either property was his principal dwelling unit, which is required for the TILA to apply to the transaction. (15 U.S.C. § 1635(a); 12 C.F.R. § 1026.23 (2017).) In his "Statement of Facts," he states that the Virginia Street property was his primary residence and suggests the trial court should have inferred as much because he used that address on his court paperwork. (Italics omitted.) As noted, nothing in the record indicates that he alleged either property was his primary dwelling unit, and the trial court's contrary inference was reasonable based on Gilmore's allegations. (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 985–986 [court assumes truth of facts properly pleaded or reasonably inferred].)

### D.    Denial of Leave to Amend

We review the denial of leave to amend for abuse of discretion, and plaintiff bears the burden of establishing an abuse of discretion by showing in

15

what manner the complaint could be amended and how the amendment would cure the defective pleading to state a cause of action. (*Buller v. Sutter Health, supra*, 160 Cal.App.4th at p. 992.) Gilmore's opposition to the demurrer in the trial court offered no reasoned argument as to how the first amended complaint could be further amended and merely concluded by asking for leave to amend as an alternative to denying the demurrer. However, a party may make a showing that he or she could validly amend his or her complaint for the first time on appeal. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153–1154.) As to the causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and fraud, Gilmore's appellate brief does not argue that his complaint can be amended to state valid claims and does not set forth any factual allegations to sufficiently state the required elements of the causes of action. (*Rossberg, supra*, 219 Cal.App.4th at p. 1491.) The trial court did not abuse its discretion in denying leave to amend as to the causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and fraud.

However, as to the rescission cause of action, Gilmore's appellate brief states that the Virginia Street property was his primary residence. Thus, it appears reasonably probable that he could amend his rescission cause of action to allege this requisite fact for stating a rescission claim under the TILA.

Wilshire argues that even if Gilmore were permitted another opportunity to amend his complaint to allege that the loan modification was secured by his primary residence, the TILA claim would still fail as a matter of law because the September 2021 loan modification "appears to be an exempt transaction" under title 12 Code of Federal Regulations part

16

12023.23(f)(2). We disagree that Wilshire has established the September 2021 loan modification is an exempt transaction under the cited regulation as a matter of law based upon the current state of the pleadings. The regulation states: "The right to rescind does not apply to . . . : [¶] . . . [¶] . . . A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." (12 C.F.R. § 1026.23(f)(2) (2017).) Wilshire's argument that the exemption applies does not address the second sentence of subdivision (f)(2), and based on the current state of the pleadings, we cannot determine that the exemption applies. Gilmore should be permitted to the opportunity to amend his rescission claim.

## DISPOSITION

Treating the order sustaining the demurrer without leave to amend as a judgment of dismissal, the judgment is affirmed as to the causes of action for breach of contract, fraud and misrepresentation, breach of the implied covenant of fair dealing, and injunctive relief. As to the rescission cause of action, the judgment is reversed and remanded with directions for the trial court to sustain the demurrer to the rescission cause of action with leave to amend. The parties shall bear their own costs on appeal.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A171376/*Gilmore v. Wilshire Quinn Capital, Inc.*

17